UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CURTIS T. TROTTER,

        Defendant.

Case No. 17-CR-227-JPS

**ORDER**

---

**1.    BACKGROUND**

On June 14, 2024, Defendant Curtis T. Trotter ("Defendant") moved for compassionate release. ECF No. 47. This was his second such motion in this case. ECF Nos. 34, 43, 46. The instant motion both "invokes extraordinary and compelling reasons" and "references . . . other recent amendments to the [United States Sentencing] Guidelines" as possible bases for reducing Defendant's sentence. ECF No. 48 at 1 (citing ECF Nos. 42 at 1 and 47-1 at 1). Accordingly, the Court ordered the Government to respond and address "all bases for potential release." *Id.* at 2.

The Government did so and indicated that it opposes Defendant's motion. ECF No. 50. It certified that it served its response on Defendant. ECF No. 50-1. Although the Court's briefing schedule order was returned as undeliverable, ECF No. 49 (indicating that the mailing was refused), there is no indication that Defendant did not receive the Government's response. Defendant did not file a reply brief within the time allotted or move for more time in which to do so. ECF No. 48 at 3. The Court therefore considers the motion fully briefed. For the reasons stated herein, Defendant's motion for compassionate release will be denied.

**2.    FACTS**

In January 2018, Defendant pleaded guilty to three bank robberies, as well as a count of brandishing a firearm during and in relation to a crime of violence. ECF No. 16 at 2–5. He was subsequently sentenced to three concurrent terms of thirty-six months for each bank robbery as well as a consecutive, statutory mandatory minimum sentence of eighty-four months for the firearm offense, for a total term of imprisonment of 120 months. ECF No. 30 at 3; ECF No. 31 at 1. Defendant elected to forego an appeal. ECF No. 32.

Defendant is currently serving his term of imprisonment at the Allenwood Medium FCI in Pennsylvania ("Allenwood"). *See* FED. BUREAU OF PRISONS, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Sept. 9, 2024). His projected release date is in August 2026. *See id.*

Defendant first moved for compassionate release in November 2020. ECF No. 34. He cited the COVID-19 pandemic, his obesity and breathing problems, and the need to care for his grandparents as extraordinary and compelling reasons for release, but the Court disagreed. ECF No. 43 at 5–7. The Court denied the motion and Defendant's motion for reconsideration of the denial. *Id.*; ECF No. 46.

Defendant's present motion for compassionate release argues that the facts that he has served 75% of his sentence, his recidivism rate is now low, he is now thirty years old and has matured, and he has participated in programming and work amount to an extraordinary and compelling reason for release. ECF No. 47. He notes that because one of his offenses of conviction is under 18 U.S.C. § 924(c), he is not allowed a reduction in his sentence for "earned time credits," so he seeks a reduction via compassionate release instead. *Id.* He also references the November 1, 2023

"sentence disparity" amendments to the United States Sentencing Guidelines. ECF No. 47-1. The Government responded to all these arguments in its opposition brief. ECF No. 50.

3.  **LEGAL STANDARD**

    3.1  **Compassionate Release**

The Court can modify a term of imprisonment "upon motion of the defendant after he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must be "extraordinary and compelling reasons warrant[ing] such a reduction." *Id.* § 3582(c)(1)(A)(i).

Section 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission" (the "Commission"). *See also United States v. Black*, No. 05 CR 70-4, 2024 WL 449940, at *4 (N.D. Ill. Feb. 6, 2024) ("Congress directed the . . . Commission, in policy statements, to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" (quoting 28 U.S.C. § 994(t))).

In 2020, the Seventh Circuit held that the relevant policy statement, U.S.S.G. § 1B1.13, was inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners. In other words, the . . . Commission has not yet issued a policy statement 'applicable' to [a prisoner's] request."). Therefore, because there was no applicable policy statement, the Seventh

Circuit explained that courts have discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement.").

However, November 1, 2023 amendments to § 1B1.13 clarify that, in addition to "expand[ing] the list of specified extraordinary and compelling reasons that can warrant sentence reductions," "the applicability of the policy statement [is extended] to defendant-filed motions . . . ." U.S. SENT'G COMM'N, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index* 7, [https://perma.cc/P7TS-LMXQ] (last visited Sept. 9, 2024). Thus, it appears that the Seventh Circuit's prior determination of inapplicability of the policy statement will change. *See United States v. Thacker*, 4 F.4th 569, 573 (7th Cir. 2021) ("[U]ntil the . . . Commission updates its policy statement to reflect prisoner-initiated compassionate release motions, district courts have broad discretion to determine what else may constitute 'extraordinary and compelling reasons' warranting a sentence reduction." (citing *Gunn*, 980 F.3d at 1180–81) (emphasis added)).

Nonetheless, the distinction is ultimately academic. Courts retain discretion under the "catchall" provision of § 1B1.13 to find "any other circumstance or combination of circumstances" that are "similar in gravity" to those specifically enumerated in § 1B1.13 to be extraordinary and compelling bases for release. U.S. SENT'G COMM'N, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index* 3, 7 (referring to § 1B1.13(b)(5) as a "catchall" provision); *cf. Gunn*, 980 F.3d at 1180 (holding, prior to November 1, 2023 amendments, that "[t]he

substantive aspects of the . . . Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused") (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007) and *Kimbrough v. United States*, 552 U.S. 85 (2007)).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). Pursuant to § 3553(a), the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

### 3.2 Guidelines Amendment 821

In April 2023, the United States Sentencing Commission ("the Commission") proposed to Congress changes to the Guidelines, known as "Amendment 821" or the "2023 Criminal History Amendment." *Materials Relating to the 2023 Criminal History Amendment*, U.S. SENT'G COMM'N, https://www.ussc.gov/policymaking/materials-relating-2023-criminal-history-amendment [https://perma.cc/T954-GQFK] (last visited Sept. 9, 2024). Part A of Amendment 821 "decreases 'Status Points' by one point for individuals with seven or more criminal history points and eliminates them for individuals with six or less criminal history points" (the "Status Point Amendment"). *Id.* (under "Who is Eligible for Retroactive Application?" heading). "Individuals who received Status Points in their criminal history calculation are eligible for this retroactive reduction." *Id.* Part B of

Amendment 821 allows for a two-level decrease in a defendant's offense level if the defendant has no criminal history points and their offense of conviction did not involve any of the nine specified aggravating factors (the "Zero-Point Offender Amendment"). U.S.S.G. § 4C1.1(a).

In August 2023, the Commission voted to give retroactive effect to both the Status Point Amendment and the Zero-Point Offender Amendment portions of Amendment 821. *Retroactivity Amendment ("Reader-Friendly" version)*, U.S. SENT'G COMM'N (Aug. 31, 2023), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf [https://perma.cc/P2B4-8FUA] (last visited Sept. 9, 2024). Amendment 821 took effect on November 1, 2023. *Id.*

The Court may modify a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the . . . Commission pursuant to 28 U.S.C. [§] 994(o)." 18 U.S.C. § 3582(c)(2).[1] "[U]pon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

In the case of Amendment 821, the relevant policy statement is Guideline § 1B1.10. That Guideline provides that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . .

---

[1] Section 994(o) provides that the Commission may "review and revise" the Guidelines. 28 U.S.C. § 994(o).

[the] amendment . . . does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B).

**4.      ANALYSIS**

The Court addresses the potential bases for reducing Defendant's sentence in reverse order: first, whether he is eligible for any reduction in his sentence under Amendment 821, and second, whether he is eligible for compassionate release.

**4.1      Guidelines Amendment 821**

Defendant is not eligible for retroactive application of either the Status Point Amendment or the Zero-Point Offender Amendment. The Status Point Amendment applies to offenders who committed their offenses "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(e). Defendant was not on supervised release or serving any sentencing at the time he committed the offenses in this case, *see generally* ECF No. 25, and accordingly, the Status Point Amendment does not apply to him. Likewise, the Zero Point Offender Amendment does not apply to him because he had criminal history points at the time of his offense, and his offense involves one of the enumerated aggravating factors (his § 924(c) conviction involved a firearm). *See id.* at 15; U.S.S.G. § 4C1.1(a)(1), (7).

**4.2      Compassionate Release**

**4.2.1      Exhaustion**

The Government first submits that Defendant's motion should be denied because he has not exhausted his administrative remedies as to the specific basis of his current motion. ECF No. 50 at 8–9. "[T]he exhaustion requirement is a mandatory claim-processing rule and therefore *must* be enforced when properly invoked." *United States v. Sanford*, 986 F.3d 779, 782

(7th Cir. 2021). Section 3582(c)(1)(A) requires "issue exhaustion"; in other words, a defendant may not present one issue to his warden for consideration as the basis for his compassionate release request and then raise a different issue to the Court as the basis for the same request. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Issue exhaustion is consistent with the purpose behind the exhaustion requirement, the Seventh Circuit reasons, because it ensures that the Bureau of Prisons has all "the information necessary to move for release on a defendant's behalf." *Id.*

Defendant states that he "exhausted [his] remedies during the pandemic." ECF No. 47 at 1. The Government found no evidence that Defendant actually did so, ECF No. 50 at 8–9, and Defendant provides no such evidence himself beyond his conclusory statement. It appears that he has not exhausted his administrative remedies.

To the extent that Defendant believes that his previous compassionate release motion, filed during the COVID-19 pandemic, "exhausted" the issues he now wishes to present, he is mistaken, because of the issue exhaustion requirement noted above—Defendant's arguments for compassionate release *now* differ from his arguments *back then*. He was obligated to raise his new arguments for compassionate release to the Allenwood warden. Nothing in the record before the Court suggests that he has done so.

Additionally, as the Government points out, to the extent that Defendant is arguing that he may file a compassionate release motion "directly with the [C]ourt" without first exhausting his administrative remedies, *id.* at 9 (quoting ECF No. 47-1), he is again mistaken. Defendant was permitted to file an Amendment 821 request directly with the Court,

but the recent Guidelines amendments did not change the administrative exhaustion requirement applicable to compassionate release motions.

For all these reasons, the Court concludes that Defendant's motion for compassionate release must be denied because he failed to exhaust his administrative remedies. 18 U.S.C. § 3582(c)(1)(A).

### 4.2.2 Extraordinary and Compelling Reasons

The Government next argues that, even if he had exhausted his administrative remedies, Defendant's cited extraordinary and compelling reasons for release—having served a majority of his sentence, his low likelihood of recidivism, his age, and his participation in prison programming and work—do not satisfy the extraordinary and compelling standard. ECF No. 50 at 6–9. The Court concurs.

While admirable, Defendant's efforts at rehabilitation by participating in programming and work do not, on their own, meet the "extraordinary and compelling" bar. *United States v. Whited*, No. 21-1644, 2022 WL 1259028, at *2 (7th Cir. Apr. 28, 2022) ("[R]ehabilitation efforts . . . are not extraordinary and compelling reasons for release and are therefore more suitably addressed as part of the § 3553(a) analysis." (citing *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021))).

The fact that he has served a majority of his sentence is also not a compelling reason for release. *United States v. Susinka*, No. 03-CR-90-16, 2023 WL 2402914, at *7 (N.D. Ill. Mar. 8, 2023) (rejecting compassionate release movant's argument that having "already served 'a very substantial period of imprisonment'" was extraordinary and compelling reason). This is especially true where the 120-month sentence Defendant received fell well below the Guidelines range of 171 to 192 months to which Defendant was exposed. *See* ECF No. 29 at 1–2 (noting applicable sentencing range of

"87 to 108 months' imprisonment as to Counts One, Three, and Five," the bank robbery counts, and 84 months as to the firearm count to run consecutive to any other counts).

That the Bureau of Prisons apparently classified Defendant as presenting a low risk of recidivism is a good sign. ECF No. 47-1 at 2. It demonstrates that one of the purposes of sentencing—"to afford adequate deterrence to [further] criminal conduct," 18 U.S.C. § 3553(a)(2)(B)—is being met. And the Court does not doubt that that prison setting has given Defendant much time to reflect on his behavior and mature into a more thoughtful adult than he was at the time of the underlying offenses. But again, this argument is better addressed as part of the § 3553(a) analysis. Moreover, the violent nature of Defendant's offenses and his still relatively young age both indicate a *higher* risk of recidivism once he is released. *Recidivism Among Federal Violent Offenders*, UNITED STATES SENT'G COMM'N 3 (Jan. 2019), [https://perma.cc/8LPM-5LBZ] (last visited Sept. 9, 2024) ("[O]ffenders who engaged in violent criminal activity—whether during the instant federal offense or as part of prior criminal conduct—generally recidivated at a higher rate, more quickly, and for more serious crimes than non-violent offenders."); *The Effects of Aging on Recidivism Among Federal Offenders*, UNITED STATES SENT'G COMM'N 22–23 (Dec. 2017), [https://perma.cc/KNF8-R8FM] (last visited Sept. 9, 2024). In light of these factors, the Court does not find that Defendant's age or assessed likelihood of recidivism are extraordinary and compelling reasons justifying reducing his sentence.

### 4.2.3   § 3553(a) Factors

Having determined that Defendant has not exhausted his administrative remedies or presented an extraordinary and compelling

reason warranting compassionate release, the Court is not required to consider the § 3553(a) factors. *See Thacker*, 4 F.4th at 576 ("*Upon a finding* that the prisoner has supplied [an "extraordinary and compelling"] reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) . . . ." (emphasis added)). However, the Government briefed the sentencing factors, ECF No. 50 at 10–13, and for the sake of complete analysis, the Court will address the same.

The § 3553(a) factors include the following: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment. 18 U.S.C. § 3553(a). As mentioned above, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" is also relevant. 18 U.S.C. § 3553(a)(6).

Defendant's offenses were very serious: he robbed three banks in less than two months, brandishing a firearm at workers each time and indicating that he was prepared to use deadly violence against them. ECF No. 25 at 5–7. The Court maintains that the 120-month, below-Guidelines sentence it imposed adequately reflects the seriousness of Defendant's repeated conduct and its impact on the workers at the banks he robbed. As explained above, the present sentence is calculated to deter Defendant from making the same mistakes again. Further, as Defendant himself notes, in the prison setting, he has access to programs and work that will assist in his rehabilitation and reintegration into society when he is released.

Page 11 of 12
Case 2:17-cr-00227-JPS     Filed 09/09/24     Page 11 of 12     Document 51

For all these reasons, application of the § 3553(a) factors counsels against compassionate release.

5.  **CONCLUSION**

Defendant has not exhausted his remedies, has not proffered an extraordinary and compelling reason warranting his release, and has not persuaded the Court that, even if extraordinary and compelling reasons warranted his release, his early release would be justified under the § 3553(a) sentencing factors. Therefore, the Court will deny Defendant's second motion for compassionate release, ECF No. 47.

Accordingly,

**IT IS ORDERED** that Defendant Curtis Trotter's motion for compassionate release, ECF No. 47, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 9th day of September, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge